AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| United States of America | ) |
|---|---|
| v. | ) |
| AARON WOODS, | ) Case No. 4:21-mj-71251-MAG |
| | ) |
| | ) **FILED UNDER SEAL** |
| | ) |
| | ) |
| *Defendant(s)* | |

**FILED**
August 2 2021
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **January 26, 2021** in the county of **Alameda** in the **Northern** District of **California**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm or Ammunition) |

| Penalties: | Max penalties – 10 years prison, $250,000 fine, 3 years of supervised release, forfeiture, $100 special assessment. |
|---|---|

This criminal complaint is based on these facts:

See attached Affidavit of FBI, SA Richard Harvey

☑ Continued on the attached sheet.

Approved as to form /s/ *Anna Nguyen*
SAUSA ANNA NGUYEN

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by phone.

Date: 08/02/2021

City and state: San Jose, CA

*Richard Harvey* /s/
Complainant's signature

FBI SA Richard Harvey
*Printed name and title*

*Virginia K. DeMarchi*
Judge's signature

Hon. Virginia K. DeMarchi, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR CRIMINAL COMPLAINT AND ARREST WARRANT

I, Richard Harvey, Special Agent with the United States Department of Justice, Federal Bureau of Investigation (hereafter, "FBI"), being duly sworn, state:

### I.  INTRODUCTION

1. I make this affidavit in support of an application under Rule 4 of the Federal Rules of Criminal Procedure for a criminal complaint and arrest warrant authorizing the arrest of Aaron Jamal WOODS (hereafter, "WOODS") for being a felon in possession of a firearm and ammunition, in violation of Title 18, United States Code, Section 922(g)(1) (hereafter, the "Target Offense"), on or about February 4, 2021, in the Northern District of California.

### II.  SOURCES OF INFORMATION

2. This affidavit is submitted for the limited purpose of securing a criminal complaint and arrest warrant. I have not included every fact known to me concerning this investigation. Instead, I have set forth only the facts necessary to establish probable cause that violations of the federal law identified above have occurred.

3. I have based my statements in this affidavit on my training and experience, personal knowledge of the facts and circumstances obtained through my participation in this investigation, information provided by other agents and law enforcement officers, information provided by reports prepared by other agents and law enforcement officers, and information provided by records and databases, including WOODS' criminal history. Where I refer to conversations and events, I often refer to them in substance and in relevant part rather than in their entirety or verbatim, unless otherwise noted. This affidavit also reflects my current understanding of facts relating to this investigation, but my understanding may change in the future as the investigation proceeds. My experience and training as an FBI agent and my participation in this investigation form the basis of the opinions and conclusions set forth below.

### III.  AFFIANT BACKGROUND

4. I am a Special Agent (hereafter, "SA") with the Federal Bureau of Investigation and have been so employed since January 2011.  I have received training on federal laws and criminal procedures at the FBI Training Academy, located in Quantico, Virginia. I am currently

assigned to a violent crimes squad in Oakland, California. My duties include the investigation of violations of federal law, including, but not limited to, robbery, carjacking, kidnapping, extortion, fugitives, and illicit firearms. Additionally, since June 2019, I have been concurrently assigned as a Task Force Officer (hereafter, "TFO") to the United States Marshals Service ("USMS") Pacific Southwest Regional Fugitive Task Force (hereafter, "PSWRFTF"), via a Special Deputation Appointment. As an FBI SA and a USMS TFO, I have participated in numerous federal and state investigations involving individuals engaged in the illegal possession of firearms.

5. As an FBI SA, I have conducted and participated in a wide variety of criminal investigations, and have received extensive training in a variety of law enforcement topics, including, but not limited to drug trafficking, terrorism, fugitives, criminal gangs, bank robbery, and illicit firearms. During these investigations, I have utilized, or participated in investigations that utilized, various types of investigative techniques, including electronic surveillance pursuant to court-authorized wiretaps; undercover agents and informants; physical surveillance, investigative interviews, mail covers, garbage searches, GPS tracking devices, pole-mounted cameras, and the service of court documents. These investigations have resulted in numerous state and/or federal prosecutions of individuals who have unlawfully possessed firearms and/or ammunition. In the course of my career, I have also received training on how to access a subject's criminal history to determine, *inter alia*, whether the individual has been convicted of a felony.

6. During my career, I have conducted preliminary and follow-up investigations into a variety of crimes. The investigations involved preparing police reports, collection of evidence, arresting suspects, interviewing victims and witnesses, interrogating suspects, and testifying in court proceedings. The crimes investigated include unlawfully possessing firearm(s)/ammunition.

7. I also have been involved in the execution of numerous state and/or federal firearms-related search warrants. As a result, I have encountered and become familiar with the various tools, methods, trends, paraphernalia, and related articles used by individuals to unlawfully possess firearms and/or ammunition.

8. In my current position as a FBI SA and USMS TFO, I have investigated and participated in charging several federal cases involving violations of Title 18 United States Code,

HARVEY AFF. IN SUPPORT OF CRIMINAL COMPL.

Section 922(g)(1) (felon in possession of a firearm and/or ammunition), as well as other federal offenses.

## IV. APPLICABLE STATUTES

9. Title 18, United States Code, Section 922(g)(1) provides: "It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

10. The elements of the Target Offense (18 U.S.C. § 922(g)(1)) are as follows: the defendant (1) knowingly possessed a firearm or ammunition; (2) that firearm or ammunition had been shipped or transported from one state to another, or between a foreign nation and the United States; (3) at the time the defendant possessed the firearm or ammunition, the defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year; and (4) at the time the defendant possessed the firearm or ammunition, the defendant knew that he had been convicted of a crime punishable by imprisonment for a term exceeding one year.

## V. FACTS SUPPORTING PROBABLE CAUSE

### A. WOODS' POSSESSION OF A FIREARM AND AMMUNITION ON OR ABOUT FEBRUARY 4, 2021

11. On or about January 26, 2021, I was apprised by Oakland Police Department (hereafter, "OPD") Officer Jason Turner, that a Ramey probable cause arrest warrant for WOODS had been issued in the Superior Court of California, County of Alameda, by the Honorable Judge Eumi K. Lee, on November 13, 2020, for violation of California Penal Code Section 187(A)--Homicide. OPD had attempted to locate WOODS on numerous occasions but was unsuccessful in doing so. Officer Turner requested the assistance of the PSWRFTF in locating and arresting WOODS for his Ramey arrest warrant.

12. I have reviewed OPD Supplemental Crime Report number 20-053624, authored by OPD Officer Khyber Mangal on February 9, 2021, documenting the arrest of WOODS on February 4, 2021. Some of the details of that report are included below. It should be noted that Officer Mangal is also assigned as a TFO with the PSWRFTF, and was working in that capacity

at the time of WOODS' arrest. It should also be noted that I was personally present during the events described below, and also participated in WOODS' arrest.

13. On February 4, 2021, members of the PSWRFTF developed information that WOODS may have been residing at a single family residence located at 1931 92nd Avenue, Oakland, California (hereafter "the residence"). The Task Force established surveillance in the vicinity of the residence at approximately 12:00 P.M. At approximately 12:30 P.M., WOODS was observed arriving at the residence in a grey Toyota Avalon bearing a paper California license plate 4ORL100 and parking it in the driveway to the residence. WOODS was observed as the driver of the vehicle, and a female, later identified as Janessa Marie White (hereafter, "White"), was in the front passenger seat. WOODS and White were observed exiting the vehicle and carrying bags of groceries to the rear of the residence. WOODS returned to the vehicle in the driveway and was taken into custody without incident.

14. Pursuant to his arrest, I conducted a search of WOODS' person, and located a set of keys and one (1) blue and black Apple iPhone 12 in the front center pocket of his hoodie sweatshirt. As detailed in the paragraphs below, this phone was later seized by OPD officers pursuant to a search warrant. OPD Officer Turner was advised that WOODS was in custody and he requested that the Task Force secure the residence for a search warrant. WOODS was advised that he was being arrested on his warrant, and that OPD was authoring a search warrant for the residence. WOODS stated that he resided in a room located in the rear of the residence.

15. OPD officers obtained a search warrant, signed by the Honorable Judge Jason Chin, Superior Court of California, County of Alameda, on February 4, 2021. I have reviewed OPD Supplemental Crime Report number 20-053624, authored by OPD Officer Jose Barocio on February 4, 2021, documenting the execution of a search warrant at the residence, and the seizure of numerous items of evidence. I have also reviewed footage from the personal digital recording device (hereafter, "PDRD") of OPD Officers Elizabeth Pelayo-Garcia and Nicholas Patane, which recorded audio and video of the search from their body worn cameras. Some of the details of that report and my observations from the PDRD footage are spelled forth below:

16. At approximately 2:25 P.M. on February 4, 2021, Officer Pelayo-Garcia conducted a pre-search walk through of the residence with her PDRD activated. She walked through the front door of the residence and into and around all the rooms accessible through the front door. Officer Pelayo-Garcia then exited a side door of the residence and walked outside

into a side yard, then around the back to the back yard, where she located a room, which is underneath and attached to the residence, but is accessible only from an external door. Officer Pelayo-Garcia then entered first a bathroom, then an additional bedroom, which was in a structure which is detached from the rest of the residence.

17. At approximately 2:20 P.M. on February 4, 2021, Officers Barocio and Pelayo-Garcia entered the rear bottom unit to conduct their search. It should be noted that this unit is located underneath and attached to the residence, and is separate from the room located in a detached structure at the rear of the residence. From the timestamp 14:20:36 to 14:21:05 on Pelayo-Garcia's PDRD footage, Officer Barocio could be observed locating a black semi-automatic pistol from on top of a black ottoman near the foot of the sole bed in the room. Officer Barocio was observed rendering the firearm safe by removing the source of ammunition and locking the slide to the rear. As Officer Barocio locked the slide to the rear, a single unspent round of ammunition could be seen being ejected from the firearm. Officer Barocio reported the firearm to be an XD .45 caliber bearing serial number US611059. The firearm was seized and later packaged and preserved for latent fingerprints and DNA.

18. Officers continued their search and observed numerous items indicating that Aaron WOODS occupied the room in which they found the firearm. There was (1) a photograph of WOODS on a stand along the northern wall of the room; (2) mail from FCI Mendota in the name of Aaron WOODS; and (3) mail from EDD in the name of Aaron WOODS. Also located but not seized, were a stack of legal paperwork for WOODS, including discovery materials, which I recognized from his previous firearm matter. Officer Pelayo advised me on scene that she had located a bunch of photographs of firearms. Upon review of the photographs, I recognized them as the photographs I had taken for WOODS' previous firearm matter, and observed that they were with what appeared to be other case-related materials pertaining to WOODS.

19. Officer Pelayo located a social security card for an Austin Woods.

20. Officers also observed numerous men's clothing in sizes 2XL and 3XL, as well as numerous shoes in the sizes 11 and 11.5. The clothing and shoes' sizes are consistent based on WOODS' physical appearance. I am familiar with WOODS's physical appearance as I was directly involved in the investigation of his prior firearm matter. WOODS has a more heavyset

build than Austin Woods. I have reviewed California Department of Motor Vehicles (hereafter, "DMV") photographs for Austin Woods, as well as social media photographs of Austin Woods.

21. I have reviewed a CD-ROM containing audio recorded interviews conducted by OPD Officer Jason Turner on February 4, 2021, with the owner of the residence, Angela Messemer, who was present at the time of the search warrant, and a telephonic interview with Janessa White, which was conducted later in the evening on the same date. Some of the details of those interviews are spelled forth below:

22. Angela Messemer (hereafter, "Messemer") identified herself as the mother of Aaron WOODS. Messemer was provided with a copy of the search warrant and a receipt for the items seized. Messemer stated that she was not aware of any firearms in the home and that she does not own any herself. Messemer stated that WOODS' brothers Anthony Woods and Austin Woods also reside in the house, but that only Aaron lives in the area OPD searched.

23. White was interviewed by Officer Turner over the telephone in a recording which is timestamped 7:29 p.m. on February 4, 2021. White stated that she does not live at the residence. When asked who lives at the residence, White stated that Aaron WOODS, his brothers Austin and Anthony, his mother, and his nephew live there. When advised that a firearm was recovered from the downstairs basement room officers believed WOODS was staying in, White stated that she was not aware of any firearms in there. White advised that when she comes over to WOODS' house, they only sleep in the living room. White opined that perhaps there was a roommate or a renter that stayed in the room where the firearm was recovered.

24. I have reviewed a CD-ROM containing the audio/video recorded custodial interview of WOODS at the OPD Criminal Investigations Division by Officers Jason Turner and Wenceslao Garcia on February 4, 2021. Some of the details of that interview are documented below.

25. WOODS was asked some basic biographical information at the start of the interview and indicated that he has lived at the residence where he was arrested since he got out of federal prison in 2020. WOODS was advised of his constitutional rights under *Miranda* and initially agreed to speak with the interviewing officers without the presence of an attorney before ultimately invoking his right to legal counsel. The interview was ended at that time. WOODS did not make any statements concerning the firearm which was recovered from the residence. Officer Garcia subsequently returned to the interview room and advised WOODS that he had a search

HARVEY AFF. IN SUPPORT OF CRIMINAL COMPL.

warrant for the collection of his DNA. Officer Garcia provided WOODS with a copy of the search warrant, then utilized a DNA collection kit to obtain a sample of WOODS DNA via a buccal swab.

26. I have reviewed OPD Supplemental Crime Report number 21-005639, authored by OPD Crime Technician C. Hunt on February 5, 2021, documenting the processing of a Springfield XD-45ACP firearm bearing serial number US611059; a single live round; and a magazine for latent prints and DNA on February 4, 2021. According to this report, OPD Technician Hunt used sterile swabs and sterile water from a single use ampoule to collect samples from the trigger, grips, slide rails, magazine release, and magazine base of the above-mentioned firearm. Technician Hunt then packaged and secured the swabs as evidence, before turning them into the OPD Property Section on February 5, 2021.

27. On February 16, 2021, Officer Turner requested that the OPD Criminalistics Division compare the DNA samples collected from the firearm by Technician Hunt, to the reference DNA sample of WOODS collected by Officer Garcia.

28. I have reviewed OPD Criminalistics Division Laboratory Report number 16816, RD# 21-005639, received by Officer Turner on June 9, 2021, documenting a DNA comparison between a reference sample of WOODS, and samples collected from the Springfield XD-45ACP firearm bearing serial number US611059 found during the search of the residence. According to this report, WOODS is included as a male major donor to samples taken from the grips of the pistol, with a frequency of one (1) in 2 decillion.

29. On November 17, 2020, the Honorable Judge Dennis J. McLaughlin, of the Superior Court of California, County of Alameda, authorized a search warrant authored by Officer Turner, for multiple social media accounts associated to WOODS. On December 15, 2020, Facebook Inc. provided records responsive to this search warrant. Among the records provided by Facebook Inc. was an Instagram account with the handle "bluestriposo." I have reviewed the Facebook records as well as the profile page for this account and recognize WOODS in the profile photograph as well as in many of the photographs and videos posted to this account. Further, the profile page lists the user name as "Aaron Oso'gottagetit Woods."

30. Among the return for the "bluestriposo" Instagram account are archived linked media files associated to this account. Among those files is an mp4 video named "archived_stories_18053031880250401." This appears to be a video that was previously posted

HARVEY AFF. IN SUPPORT OF CRIMINAL COMPL.

to Instagram Stories for this account. This video depicts four (4) individuals listening to music in a car that is driving down the road at nighttime. The video appears to have been filmed from the perspective of someone seated in the rear passenger seat of the vehicle. The camera pans from the driver to the front passenger, then to the person seated in the rear driver side of the vehicle, before pointing down into the lap of the person filming. The person filming is holding what appears to be a black semi-automatic pistol in his left hand that appears similar to the one found in WOODS' bedroom. The camera then pans upward and around, capturing the face of the person filming, who appears to be WOODS. According to the return, the timestamp for when Story ID 18053031880250401 was posted to this account was 07:23:31 UTC on October 9, 2020.

31. On February 8, 2021, the Honorable Judge Charles Smiley, of the Superior Court of California, County of Alameda, authorized a search warrant authored by Officer Turner, for (1) blue and black Apple iPhone 12, which was seized from the person of WOODS when he was arrested on February 4, 2021. On February 11, 2021, pursuant to the above-mentioned warrant, OPD Sergeant Yun Zhou extracted the contents of this device utilizing a Cellebrite device. I have reviewed the contents of WOODS' phone and- observed the following:

32. In the "Chats" feature of this device, there is an exchange between WOODS (using telephone number 510-880-9777) and a contact indexed as "Glo Face" (using telephone number 510-408-8897), consisting of 235 messages between the two participants from January 13, 2021 to February 2, 2021. Many of the chats in this exchange are of a personal nature or appear to reference buying and selling marijuana. On January 27, 2021, the following exchange occurs between WOODS and "Glo Face":

    1/27/2021 12:53:14 PM (UTC-8) GLO FACE: "Probably dope too wat niggas on today"
    1/27/2021 12:58:37 PM (UTC-8) WOODS: "Nothing I'm on the block"
    1/27/2021 12:58:50 PM (UTC-8) GLO FACE: "Bringin it back huh my Babyy"
    1/27/2021 12:59:32 PM (UTC-8) WOODS: "Trying"
    1/27/2021 12:1:01:22 PM (UTC-8) GLO FACE: "Der u go gotta get back too what u kno best bub it's cold af out der or I'd b witchu plus I'm naked I sold mine but b safe brother love u"
    1/27/2021 1:02:36 PM (UTC-8) WOODS: "I keep one on me ma baby"

1/27/2021 1:11:18 PM (UTC-8) GLO FACE: I know u aint goin let nun happen too me if u around"

1/27/2021 1:11:37 PM (UTC-8) WOODS: "Never"

1/27/2021 1:11:59 PM (UTC-8) GLO FACE: "I just ain't takin no chances shot twice Already I'm koo"

1/27/2021 1:12:13 PM (UTC-8) WOODS: "I don't blame you"

33. I believe that "Glo Face" is Terry Fammons (hereafter, "Fammons"), who is a close associate of WOODS, and is known to go by the nickname of "Glow."

34. On February 22, 2018, I was present when OPD arrested Woods and Fammons for weapons and narcotics offenses at WOODS' residence, after PSWRFTF officers located, among other items, a Draco 7.62x39mm caliber rifle; a Glock .40 caliber pistol (which was later found to be a machinegun); numerous magazines and ammunition; and a large amount of suspected marijuana. On the same date, during an audio/video recorded custodial interview with myself and OPD Sergeant Richard Vass, after being advised of his constitutional rights under *Miranda*, WOODS agreed to speak with us without the presence of an attorney. WOODS identified Fammons as "his little play brother Glow." WOODS admitted to possessing the firearms and stated that one of the reasons he had the guns was because Fammons had recently been shot on the front porch of WOODS' residence.

35. I believe that in the above-mentioned chat between WOODS and Fammons, Fammons is telling WOODS that he does not have a firearm ("I'm naked") because he sold it ("I sold mine"). I believe that WOODS' reply "I keep one on me ma baby" is in reference to a firearm. I further believe that Fammons is reluctant to be on the streets ("on the block") because he has previously been a shooting victim ("been shot twice"), but feels confident WOODS will protect him ("u aint goin let nun happen too me").

36. A further review of WOODS' iPhone 12 revealed numerous photographs and videos of WOODS and a person I recognize as White, inside a room with green walls. In some of these, funeral/memorial programs can be seen attached to one of the walls. In the OPD PDRD footage from Officer Pelayao-Garcia, the walls in the room where the firearm was located are the same color of green, and the same funeral/memorial programs can be seen attached to the walls.

37. I believe, based on my training, experience, and conversations with other law enforcement officers, that WOODS was residing in the room where the firearm was located.

HARVEY AFF. IN SUPPORT OF CRIMINAL COMPL.

Despite White's statement to OPD Officer Jason Turner on February 4, 2021, I believe that White knew WOODS resided in that room, has herself been in that room with him, and was trying to distance WOODS from it because a firearm was located there. WOODS' own statement, that of his mother, and photos and videos obtained from his cellular phone support this.

38. WOODS has a documented history of possessing illegal firearms. I believe that a video posted to his "blustriposo" Instagram on or about October 9, 2020, account depicts WOODS holding a firearm although there is no indication of when that video was filmed. I further believe that the chat between WOODS and Fammons on or about January 27, 2021, indicates that WOODS possessed a firearm on that date. It should be noted that according to the Cellebrite report, this chat occurred one (1) week prior to the recovery of the firearm from a room in which I believe WOODS resides. Finally, the OPD Laboratory Report referenced above, indicates that the male major contributor of DNA obtained from a swab of the grips of the pistol has a one in two decillion chance of being someone other than WOODS.

**B. INTERSTATE COMMERCE**

39. On February 16, 2021, I reviewed some of the evidence items seized by OPD from the -search of 1931 92nd Avenue, Oakland, California, at the OPD Property Section, located at 455 7th Street, Oakland, California. I examined one (1) white box labeled "EQ#1," containing three (3) manila envelopes. The first envelope, labeled "1 of 2," contained one (1) black Springfield Armory .45 caliber pistol, model XD45ACP, bearing serial number US611059. The second envelope contained one (1) partially loaded Springfield Armory 45ACP .45 caliber magazine, silver in color; and one (1) unspent round of .45 caliber ammunition, bearing the head stamp "WINCHESTER .45 AUTO," nickel in color, which was recovered from the chamber of the aforementioned pistol. An examination of the magazine revealed that it contained a total of nine (9) rounds of unspent .45 caliber ammunition, all bearing the head stamp "WINCHESTER .45 AUTO." Six (6) of the rounds from the magazine were nickel in color, and three (3) of the rounds were brass in color. The third envelope, labeled "Laboratory Test Fires," was not examined. I photographed all of the above-mentioned items utilizing my FBI-issued cellular phone, then burned the photographs to a CD-ROM.

40. On February 16, 2021, I emailed several photographs of the firearm and ammunition seized by OPD on February 4, 2021 to Bureau of Alcohol Tobacco and Firearms

HARVEY AFF. IN SUPPORT OF CRIMINAL COMPL.
10

("ATF") SA Christopher Bailey who is an ATF nexus expert, to include detailed photographs of the head stamps on the ammunition. On the same date, SA Bailey advised me, telephonically, that neither the firearm, nor the ammunition were manufactured in the State of California. Based on this, I believe the firearm and ammunition must have been shipped or transported from one state to another or from a foreign country to the United States before WOODS possessed it.

### C. WOODS' CRIMINAL HISTORY

41. I have reviewed WOODS' criminal history as part of my investigation. WOODS has been previously convicted of a crime punishable by imprisonment for a term exceeding one year. On or about February 8, 2019, WOODS was convicted in the Northern District of California of one count of violation of Title 21 U.S.C. Section 841(a)(1), (b)(1)(D)—Possession with intent to distribute marijuana; and one count of violation of Title 18 U.S.C. Section 922(o)—Possession of a machinegun, for which he received a sentence of 30 months in prison and three years of supervised release.

42. There is probable cause to believe that WOODS knew he had been convicted of a crime in any court punishable by imprisonment for a term exceeding one year, among other reasons because he received a sentence of over one year in prison.

### VI. CONCLUSION

43. On the basis of my participation in this investigation and the information summarized above, there is probable cause to believe that on February 4, 2021, in the Northern District of California, Aaron WOODS knowing he had previously been convicted of a crime

punishable by a term of imprisonment exceeding one year, knowingly possessed a firearm and ammunition, all in and affecting interstate and foreign commerce, in violation of Title 18, United States Code, Section 922(g)(1).

/s/ *Richard Harvey*
RICHARD HARVEY
Special Agent
Federal Bureau of Investigation

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this  2  day of ~~August, 2021~~  August 2021

*Virginia K. DeMarchi*
HONORABLE VIRGINIA K. DeMARCHI
UNITED STATES MAGISTRATE JUDGE